UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Chambers of<br>**Michael A. Hammer**<br>United States Magistrate Judge | Martin Luther King, Jr. Federal Bldg.<br>& U.S. Courthouse<br>50 Walnut Street, Room 2042<br>Newark, NJ 07102<br>(973) 776-7858 |

October 16, 2023

**LETTER OPINION & ORDER**

Mr. Alex Ramos
S.T.U.
8 Production Way
PO Box 905
Avenel, NJ 07001

Re:  *Ramos v. Main, et al.,* **Civil Action No. 21-1284 (MCA) (MAH)**

Dear Litigants:

This matter comes before the Court by way of Plaintiff Alex Ramos's motion for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). Mot. for Pro Bono Counsel, June 30, 2023, D.E. 25. The Court has reviewed Plaintiff's submission and, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, has decided the motion without oral argument. For the reasons set forth below, Plaintiff's motion is denied without prejudice.

**BACKGROUND**

On February 3, 2021, Plaintiff initiated this civil rights action by submitting a Complaint against Defendants, claiming a violation of his rights pursuant to 28 U.S.C. § 1983 and 42 U.S.C. § 1985. Compl., D.E. 1, at 11-13. Plaintiff is a civilly committed detainee at the Special Treatment Unit ("STU") in Avenel, New Jersey pursuant to New Jersey's Sexually Violent Predators Act, N.J. Stat. §§ 30:4-27.24 to 30:4-27.38. *Id.* at 2. Plaintiff names Drs. Merrill M.

Main, D. Stanzione, and J. Riley; social workers Samantha Ames, Jamie Cook, and Sana Kamrin; correctional officers Gallota, Baird, and S. Cerone; and "John and Jane Does One Through Ten" as Defendants.  *Id.* at 1-9.

Plaintiff is proceeding *pro se* and sought to proceed in forma pauperis in this action.  *Id.* at 11; Application to Proceed In Forma Pauperis, D.E. 1-1.  As such and pursuant to 28 U.S.C. § 1915A, the Honorable Madeline Cox Arleo screened Plaintiff's complaint.  Opinion & Order, September 22, 2021, D.E. 4.  In an Opinion and Order dated September 22, 2021, Judge Arleo dismissed seven (7) of Plaintiff's claims and allowed three (3) claims to proceed.  *Id.* at 17.  In Plaintiff's surviving claims, he asserts claims for:  (1) sexual harassment by Officers Gallotta and Baird; (2) retaliation by Cook, Ames, Dr. Riley, and Baird; and  (3) denial of sex offender treatment by Cook, Ames, and Dr. Riley.  *Id.*  These claims are against Defendants in their individual capacities only, as Judge Arleo dismissed all claims against Defendants in their official capacities.  *Id.*

Plaintiff alleges that as a result of witnessing and reporting Defendant Cook performing sexual acts with another inmate, he was subject to retaliation by Defendants Cook, Ames, Dr. Riley, and Baird in the form of changing Plaintiff's job assignment, falsifying his treatment records, claiming Plaintiff posed a threat to Defendant Cook because of his commentary on and reports of what he witnessed, and sanctioning Plaintiff through the Modified Activities Program (MAP) which reduced Plaintiff's ability to move throughout the STU, obtain therapy, and work.  Compl., D.E. 1, at 4-7, 10-11.  Further, Plaintiff alleges he was denied sex offender treatment by Defendants Cook, Ames, and Dr. Riley because he was unjustifiably placed in MAP which hinders his ability to obtain therapeutic treatment.  *Id.* at 4-7, 11-12.  Plaintiff further alleges on June 12, 2019 and in November 2019, Defendant Officers Gallotta and Baird, respectively,

touched Plaintiff in a sexual manner. *Id.* at 7-8. Plaintiff seeks punitive damages from each Defendant, compensatory damages for Plaintiff's lost wages and failure to maintain his treatment status, and injunctive relief declaring Plaintiff's treatment phase restored to phase three. *Id.* at 14-15.

Plaintiff's case was administratively dismissed on July 11, 2022 for failure to prosecute pursuant to L. Civ. R. 41.1(a). Order, July 11, 2022, D.E. 8. On July 11, 2022, Plaintiff filed a Motion to Reopen his case. Mot. to Reinstate Case, July 11, 2022, D.E. 9. On February 24, 2023, the Court granted Plaintiff in forma pauperis status and reopened Plaintiff's case. Order, February 24, 2023, D.E. 11. On June 30, 2023, Plaintiff filed the instant motion for the appointment of pro bono counsel. Mot. for Pro Bono Counsel, June 30, 2023, D.E. 25. Defendants have not opposed this motion.

## DISCUSSION

The appointment of pro bono counsel in a federal civil case is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Parham v. Johnson*, 126 F.3d 454, 457 (3d. Cir. 1997). Courts nevertheless have the ability and discretion to appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1). *Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002). The decision to appoint counsel may be made at any point during the litigation, including sua sponte by the Court, *id.*, and "must be made on a case-by-case basis." *Tabron v. Grace*, 6 F.3d 147, 158 (3d Cir. 1993). The Third Circuit Court of Appeals has also cautioned that courts "should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d at 499.

The Court's analysis of the instant motion is guided by the multi-part framework set forth by the Third Circuit in *Tabron v. Grace*, 6 F.3d at 156-57.  The Court must first assess "whether the claimant's case has some arguable merit in fact and law."  *Montgomery*, 294 F.3d at 499-500.  If the applicant's claim has some merit, the Court considers the following non-exhaustive factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses; [and]
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham*, 126 F.3d at 457-58 (citing *Tabron*, 6 F.3d at 155-56, 157 n.5).

For the purposes of this motion, the Court assumes that Plaintiff's claims have merit and turns to the first *Tabron* factor.  In analyzing this factor, the Court considers a party's "education, literacy, prior work experience, and prior litigation experience."  *Tabron*, 6 F.3d at 156.  Courts also consider restraints in place by virtue of confinement, where a plaintiff is incarcerated.  *Id.*

Plaintiff provides four reasons why he is unable to present his own case.  *Id.* at 5-6.  First, Plaintiff argues the law library at the STU is in disarray including contradictory notices regarding printing.  *Id.* at 5.  Second, Plaintiff argues he was separated from the prisoner-paralegal at the STU who assisted him with previous filings.  *Id.* at 5.  Plaintiff states that it took two months from the time he obtained the form application for pro bono counsel from the Court until he was able to obtain assistance at the STU from another inmate to file the instant motion.  *Id.* at 5.  Plaintiff asserts the conditions regarding the law library and his separation from the prisoner-paralegal were both considered by Judge Arleo when granting his Motion to Reinstate and they have worsened.  Ltr. Br. in Supp., D.E. 25, at 5; Order, February 24, 2023, D.E. 11.  Third,

Plaintiff argues he is only able to grasp basic English communication because English is not his first language and, therefore, he is unable to understand the complexities of law and legal procedure.  *Id.* at 6.  Plaintiff states he cannot improve his English language skills because the STU does not provide programs to assist residents in improving their English as a second language.  *Id.* at 6.  Finally, Plaintiff argues his placement on the "Cognitive Life Skills" track in the STU treatment program means that Plaintiff has limitations that "make it unlikely that Mr. Ramos will ever be able to adequately comprehend law, court rules and procedure well enough to present his case without assistance."  *Id.* at 6.  According to Plaintiff, the Cognitive Life Skills track is designed for "residents whose cognitive abilities are limited to an extent that it impairs their ability to comprehend and retain treatment concepts."  *Id.* at 6.

      The Court respectfully disagrees with Plaintiff's assertions that the first *Tabron* factor weighs in favor of appointing him counsel.  Plaintiff's allegations that the STU law library is in disarray because there are conflicting notices regarding printing and he was separated from his inmate paralegal are insufficient to justify the appointment of counsel under the first factor of *Tabron*.  The fact that a prison law library is subpar in some theoretical sense is insufficient to establish that a pro se plaintiff is entitled to the appointment of pro bono counsel. *Cf. Lewis v. Casey*, 518 U.S. 343, 351 (1996) (An inmate ". . .must demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").  Except for notices limiting printing to two copies per resident, Plaintiff provides no documentation to support his assertion that the STU law library is subpar.  Mot. for Pro Bono Counsel, Appx. to Br., D.E. 25, at PA14.  Even assuming the STU law library is limiting Plaintiff to two copies of documents and is providing contradictory notices regarding printing, the Court fails to see how this prevents Plaintiff from presenting his own case.  By way of example, Plaintiff has had no

problem filing a motion to reopen his case, completing the USM-285 forms necessary for serving Defendants, and filing the instant motion. See D.E.s 9, 13, and 25. Thus, the Court finds that any law library issues attendant to his confinement at the STU do not prevent Plaintiff from litigating this action. Plaintiff also asserts that his separation from the inmate who previously assisted him with filing the instant matter supports the appointment of pro bono counsel. Ltr. Br. in Supp., D.E. 25, at 5. However, "courts have recognized that difficulties attendant to prison life, such as solitary confinement, restricted access to the law library and an inability to secure court documents, are routine restrictions of prison life. . . ." *United States v. Green*, No. 07-CR-271, 2013 WL 606341, at *3 (W.D. Pa. Feb. 19, 2013). Plaintiff's lack of access to printing in the library and his separation from a paralegal are not unique conditions for inmates. *See id*. The Court is understanding of the difficulties arising from Plaintiff's detention. As such, during the September 6, 2023 scheduling conference conducted on the record, the Court requested that Defendants submit a letter to the STU in an attempt to have the inmate paralegal Plaintiff had been working with made available to Plaintiff during the next conference to assist Plaintiff with comprehension of the proceeding only. Tr. of Sept. 6, 2023 Sched. Conf., 21:3-23:4. Based on the foregoing, the Court is constrained to conclude the conditions of the STU law library and Plaintiff's separation from the inmate paralegal who previously assisted him do not favor the appointment of counsel.

In further support of *Tabron* factor one, Plaintiff asserts he cannot effectively present his case because English is not his first language and he has a cognitive disability. Ltr. Br. In Supp., D.E. 25, at 6. Plaintiff has provided no evidence to support his declaration that he has a disability that prevents him from effectively presenting his case other than his own self-serving Certification that he was placed on the Cognitive Life Skills (CLS) track which is designed for

6

inmates "with cognitive impairments and learning disabilities that affect [their] ability to process and learn written material, instruction, and in general have impaired ability to learn." Appx. to Br., D.E. 25, at PA6-PA7.  Plaintiff does not support his claim that he lacks he the basic literacy skills to pursue this case with any evidence.  *See id.*  For example, he does not submit a diagnosis by a qualified person, indicate what his grade level is, or provide a score from the Test of Adult Basic Education ("TABE").  Plaintiff's Certification alone is insufficient to justify the appointment of pro bono counsel as courts frequently cite to TABE Scores or a diagnosis by a qualified person to support the appointment of pro bono counsel when a plaintiff claims a cognitive disability prevents them from effectively presenting their case.  *See, e.g., Woodham v. Sayre Borough Police Dep't*, 191 Fed. Appx. 111, 115 (3d. Cir. 2006) (noting movants grade 5.9 reading skill level); *Perez v. Hauck*, No. 07-5685, 2008 WL 797054, at *4 (D.N.J. Mar. 20, 2008) (holding plaintiff's third grade education in Spanish and plaintiff's "severely hampered ability to express himself in English" justify the appointment of counsel); *Hernandez v. Montoya*, No. 16-4592, 2018 WL 4676042, at *7 (D.N.J. Sept. 27, 2018) (citing Plaintiff's TABE score indicating a grade level equivalent from 2.7 to 3.9 in support of the appointment of counsel).  While Plaintiff asserts that his English language skills and his diminished cognitive ability impair his ability to present his case, Plaintiff has filed all of his paperwork in English and he was responsive during the September 6, 2023 scheduling conference that was held on the record. Plaintiff answered questions appropriately and adequately and also asked questions of the Court. Tr. of Sept. 6, 2023 Sched. Conf., 12:16-19; 19:8-13.  Further, Plaintiff was effective in articulating the facts surrounding this matter and his desire to amend the Complaint to add new parties and claims.  Tr. of Sept. 6, 2023 Sched. Conf., 5:2-3.  The Court determines from the

foregoing that Plaintiff has the ability to present his own case. This factor consequently disfavors the appointment of counsel.

The Court next considers the complexity of the legal issues in this case. Complexity exists and weighs in favor of appointment of counsel "where the law is not clear, as it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." *Tabron*, 6 F.3d at 156. Courts also consider the "proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459. Plaintiff argues "the complexity [of this matter] is self evident" because he is alleging sexual harassment by the staff of the facility in which he is confined and that same staff maintains control over his person and effects. Ltr. Br. in Supp., D.E. 25, at 6. Plaintiff conflates the complexity of his initiating a lawsuit while in custody with the legal issues at hand. The law concerning Plaintiff's causes of action is well-settled and are standard complaints made by detainees and inmates. "[A] § 1983 plaintiff [must] prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d. Cir. 2011); *see also Hilton v. Whitman*, iv. No. 04-6420, 2008 WL 5272190, at *4 (D.N.J. Dec. 16, 2008) (explaining "[a] plaintiff must 'identify the exact contours of the underlying right said to have been violated'"). Plaintiff has not established or even suggested that his claims involve groundbreaking legal issues. *See* Ltr. Br. in Supp., D.E. 25, at 6. The Court is therefore constrained to conclude the legal issues involved in this matter are not complex. The Court is unable to assess the complexity of discovery issues in

8

this case because the parties have not yet engaged in discovery.[1]  In sum, at this juncture, the second *Tabron* factor weighs against the appointment of counsel.

The Court next considers the degree to which factual investigation will be necessary and Plaintiff's ability to pursue such investigation.  The Third Circuit has stated that "courts should consider a prisoner's inability to gather facts relevant to the proof of his claim" in analyzing this factor.  *Montgomery*, 294 F.3d at 503.  "[T]he court may also consider the extent to which prisoners and others suffering confinement may face problems pursuing their claims," such as "where the claims are likely to require extensive discovery and compliance with complex discovery rules."  *Tabron*, 6 F.3d at 156 (citing *Rayes v. Johnson*, 969 F.2d 700, 703 (8th Cir. 1992)).  Plaintiff supports *Tabron* factor two by arguing "[i]t is more than reasonable to assume that the Defendants will deny the allegations."  Ltr. Br. in Supp., D.E. 25, at 7.  Plaintiff has not demonstrated an inability to undertake the necessary investigation to pursue his claims.  *See* Ltr. Br. in Supp., D.E. 25, at 7.  At this stage of the litigation, it is too early for the Court to determine what investigation will be necessary for Plaintiff to prove his claim.  This factor weighs against the appointment of counsel.

The Court examines the amount a case is likely to turn on credibility determinations in analyzing factor four.  *Parham*, 126 F.3d at 460.  Because most cases require at least some credibility determination, the Third Circuit has instructed courts to consider "whether the case [will be] solely a swearing contest."  *Montgomery*, 294 F.3d at 505 (citing *Parham*, 126 F.3d at 460).  "[A] 'swearing contest' occurs when the resolution of the case 'may well depend on nothing more than whom the finder of fact believes.'"  *Abulkhair v. U.S. Postal Serv.*, Civ. No.

---

[1] As of the date of this Letter Opinion and Order, the parties are scheduled to serve interrogatories on or before October 20, 2023, and fact discovery shall remain open through June 15, 2024.  Pretrial Scheduling Order, September 6, 2023, D.E. 33.

9

13-7796, 2014. WL 1607379, at *4 (D.N.J. Apr. 22, 2014) (quoting *Wassell v. Youkin*, Civ. No. 07-326, 2008 U.S. Dist. LEXIS 1820, at *14 (W.D. Pa. 2008)).  Plaintiff has stated "[c]redibility will be a major factor in deciding this case and the facts of who did and said what and when will determine who has that credibility and who does not." Ltr. Br. in Supp., D.E. 25, at 7.  The Court can only surmise as to whether credibility determinations will dictate the outcome of this case, as plaintiff has provided no reason to support his assertion that credibility will be a major factor in this case.  *See* Ltr. Br. in Supp., D.E. 25, at 7.  It is unclear whether documents substantiating the parties' claims and defenses will be produced, or whether the parties will largely rely upon credibility.  The Court consequently concludes this factor is neutral.

The Court asks whether this matter will require the testimony of expert witnesses in considering factor five.  *Parham*, 126 F.3d at 460.  Plaintiff poses a series of rhetorical questions before arguing that the current and unforeseeable issues of the case could involve expert testimony, but the determination is beyond Plaintiff's abilities because he is a layperson working across a language barrier with cognitive limitations.  Ltr. Br. in Supp., D.E. 25, at 7.  However, as the Court has already discussed, Plaintiff was able to adequately communicate during the September 6, 2023 scheduling conference on the record and has no documented disability.  *See* Mot. for Pro Bono Counsel, D.E. 25.  As such, this factor weighs against the appointment of counsel.

The Court lastly considers Plaintiff's ability to afford and retain counsel.  *Tabron*, F.3d at 156.  As previously noted, Plaintiff has been permitted to proceed in forma pauperis.  Order, Feb. 24, 2023.  Plaintiff's in forma pauperis application states that during his incarceration his monthly income did not exceed five hundred and forty dollars ($540.00).  In Forma Pauperis Application, D.E. 1, September 22, 2021.  Plaintiff indicated in his in forma pauperis application

10

that as of February 3, 2021, and for the nine months prior, he no longer held an institutional position.  IFP Appl., D.E. 1.  It is not apparent to the Court at this time whether Plaintiff has resumed an institutional position since February 3, 2021.  *See* Ltr. Br. in Supp., D.E. 25 at 8.  However, Plaintiff explains in the motion that he is unable to obtain counsel because he "cannot afford counsel (or for that matter much of anything) on his own behalf."  Ltr. Br. in Supp., at 8.  While Plaintiff's current financial status weighs in favor of appointing counsel, indigence alone does not warrant the appointment of pro bono counsel.  *Clinton v. Jersey City Police Dep't*, Civ. No. 07-5686, 2009 WL 2230938, at *1 n.4 (D.N.J. July 24, 2009); *see also Johnson v. De Prospo*, Civ. No. 08-1813, 2009 WL 276098, at *3 (D.N.J. Feb. 5, 2009).  The *Tabron* factors, when balanced, disfavor the appointment of counsel in this matter.  Plaintiff's motion will therefore be denied.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for the appointment of pro bono counsel, D.E. 25.  The denial is without prejudice to Plaintiff's right to renew his application at a later date.

<u>/s Michael A. Hammer</u><br>
Hon. Michael A. Hammer,<br>
United States Magistrate Judge