UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEX RAMOS, | : |
| Plaintiff, | : Civil Action No. 21-1284 (MCA)(MAH) |
| vs. | : OPINION |
| DR. MERRILL M. MAIN, et al., | : |
| Defendants. | : |

**HAMMER, United States Magistrate Judge**

This matter comes before the Court by way of Plaintiff Alex Ramos's renewed motion for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). Mot. for Pro Bono Counsel, December 12, 2023, D.E. 41. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court has decided the motion without oral argument. For the reasons set forth below, the Court will grant Plaintiff's motion and appoint pro bono counsel.

**I.   BACKGROUND[1]**

On February 3, 2021, Plaintiff Alex Ramos ("Plaintiff") filed a Complaint alleging civil rights violations pursuant to 42 U.S.C. §§ 1983 and 1985. Compl., D.E. 1, at 11-13. Plaintiff is a civil detainee at the Special Treatment Unit ("STU") in Avenel, New Jersey, in accord with the Sexually Violent Predators Act, N.J. Stat. §§ 30:4-27.24 to 30:4-27.38. The Complaint as originally filed alleged that various state officials had verbally and sexually harassed Plaintiff and retaliated against him for reporting the harassment. *See generally* Compl., D.E. 1.  The

---

[1] The Court writes primarily for the parties and therefore sets forth only the facts pertinent to the instant motion.

original Complaint named Drs. Merrill M. Main, D. Stanzione, and J. Riley; social workers Samantha Ames, Jamie Cook and Sana Kamrin; Corrections Officers Gallotta, Baird, and S. Cerone as Defendants, along with several John and Jane Does. Compl., D.E. 1, at 9-11. Plaintiff asserted sexual harassment by Officers Gallotta and Baird; retaliation by Cook, Ames, Dr. Riley, and Baird; and denial of sex offender treatment by Cook, Ames, and Dr. Riley. *Id*. at 4-7, 10-11. He alleged that in mid-to-late 2019, Officers Gallotta and Baird each touched him in a sexual manner. *Id*. at 7-8. He also asserted Defendants falsified his treatment records and punished him by reducing his ability to move throughout the center, obtain therapy, and work. *Id*.

Following a screening of the Complaint pursuant to 28 U.S.C. § 1915A, on September 22, 2021, the District Court allowed the following claims to proceed: (1) First Amendment retaliation against Defendants Cook, Ames, Dr. Riley, and Baird; (2) Fourteenth Amendment claims against Defendants Cook, Ames, and Dr. Riley for denial of sex-offender treatment; and (3) Fourteenth Amendment claims against Officers Gallotta and Baird for sexual harassment. *See generally* Op. & Order, Sept. 22, 2021, D.E. 4. The District Court dismissed, without prejudice, Plaintiff's retaliation claims against Drs. Main and Stanzione, his sexual harassment claims against Kamrin, Cerone, Main and Stanzione, as well as his Fifth Amendment, Equal Protection, and various state law claims. *Id.* Plaintiff did not file an amended complaint or otherwise seek to renew the dismissed claims.

On June 30, 2023, Plaintiff moved for appointment of pro bono counsel. Mot. for Pro Bono Counsel, June 30, 2023, D.E. 25. On October 16, 2023, the Court denied his motion without prejudice, finding that the totality of the *Tabron* factors weighed against the appointment of counsel. Op. & Order, Oct. 16, 2023, D.E. 34.

On September 6, 2023, the Court held a telephonic scheduling conference ("Scheduling Conference") with Plaintiff and Defense Counsel to set a schedule for the litigation tasks in this matter. Pretrial Sched. Order, D.E. 33. During that conference, Plaintiff indicated that he enlisted the help of a fellow detainee at the STU, Roy Marcum ("Mr. Marcum") in this litigation, and requested that the Court and Defense Counsel coordinate and facilitate Mr. Marcum's attendance at the next conference. Tr. of Sept. 6, 2023 Conf., D.E. 35, 19:8-13.

On December 15, 2023, the Court held a telephonic status conference ("December 15 Conference") where Plaintiff, Mr. Marcum, and Defense Counsel were all present. *See generally* Tr. of Dec. 15 Conf., D.E. 51. Plaintiff and Mr. Marcum were sitting in the same room. *Id*. During the conference, Mr. Marcum facilitated communication for Plaintiff, and provided general background on behalf of Plaintiff.[2] *Id.* at 5:17-6:7. Mr. Marcum explained that Plaintiff has difficulty understanding communications with the Court and the legal process generally, which makes it nearly impossible for Plaintiff to adequately and independently present his case. *Id.* at 18:8-9. For instance, "[Mr. Marcum] gave him . . . a stack of his own paperwork to collate one day, and he had the notice of appearance of one of the lawyers as the first page of one of his certifications." *Id.* at 18:9-14. "He understands what was done wrong to him. And he understands the court is the place to put it right. He has absolutely no idea how to go about doing it." *Id.* at 18:15-18.

Mr. Marcum also emphasized that Plaintiff struggles significantly with completing court documents. *Id*. at 11:23-12:10. For example, Mr. Marcum stated that at the outset of this litigation, Plaintiff failed to complete the United States Marshal's service form, delaying these

---

[2] To be clear, Mr. Marcum did not attempt to appear for Plaintiff or give Plaintiff legal advice. *See generally* Tr. of Dec. 15 Conf., D.E. 51.

proceedings extensively. *Id*. "[O]ne of the delays of three months after the initial dismissal was Mr. Ramos didn't even understand that the forms to serve the defendants . . . he didn't even understand that, they had to be filled out." *Id.* at 11:24-12:7.

During the conference, Plaintiff's difficulty in understanding English was also discussed and Defense Counsel confirmed that Plaintiff will require a Spanish interpreter during his deposition. *Id.* at 5:6-5:15, 6:2-13. "And so a Spanish interpreter, we'll get is someone, you know, who understands the Puerto Rican dialect." *Id.* at 6:12-13.

Shortly before the December 15 Conference, on December 12, 2023, Plaintiff filed a renewed motion for the appointment of pro bono counsel. Mot. for Pro Bono Counsel, December 12, 2023, D.E. 41. Following the December 15 Conference, the Court permitted Plaintiff to file a supplemental brief in support of his motion, to address concerns related to a petition for post-conviction relief that Plaintiff had filed in state court.[3] Tr. of Dec. 15 Conf., D.E. 51, at 16:7-11, 20:1-14; Suppl. Br., D.E. 44. Defendants did not file an opposition to the motion or the supplemental brief.

## II.  DISCUSSION

Courts have discretion to appoint counsel for civil litigants pursuant to 28 U.S.C. § 1915(e)(1). The Court's analysis of this motion is guided by the factors set forth in *Tabron v. Grace*, 6. F.3d 147,155-56 (3d Cir. 1993). The factors are as follows:

(1) the plaintiff's ability to present his or her own case;
(2) the complexity of the legal issues;

---

[3] During the December 15 Conference, Plaintiff explained that had he filed a petition for post-conviction relief in state court and if successful, he would be moved to the county jail to await trial. Tr. of Dec. 15 Conf., D.E. 51,15:16-20. Because the Court finds that Plaintiff should be appointed counsel based on its dealings with him in late 2023 and his apparent inability to comprehend basic instructions, in part, due to a language barrier, it need not reach Plaintiff's supplemental brief and whether a potential successful post-conviction relief petition should be the basis of this appointment of counsel.

> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses; [and]
> (6) whether the plaintiff can attain and afford counsel.

*Id.*

Having now conducted two conferences with Plaintiff within the last year, the Court concludes that Plaintiff's motion for the appointment of pro bono counsel should be granted. It is apparent to the Court through its dealings with Plaintiff that he is unable to investigate and independently present his case. *See generally* Tr. of Dec. 15 Conf., D.E. 51. In making this determination, the Court need not find that every *Tabron* factor is satisfied to appoint pro bono counsel. *Brandt v. Ganey*, No. 06-5639, 2008 WL 5416393, at *11 (D.N.J. Dec. 22, 2008) ("A *pro se* litigant need not meet each of the *Tabron* factors for the Court to appoint counsel."); *Parham v. Johnson* 126 F.3d 455, 461 (3d Cir. 1997); *Montgomery v. Pinchack*, 294 F.3d 454, 505 (3d Cir. 2002). Plaintiff's renewed motion implicates primarily the first, third, and fourth *Tabron* factors. Accordingly, the Court will not undertake a full analysis of all factors. Instead, the Court analyzes only those relevant to the recent developments in the case. *See Marley v. Donahue*, No. 14-1597, 2016 WL 7209622, at *1 (D.N.J. July 14, 2016) (considering only the factors impacting the relevant developments asserted by plaintiff in her renewed motion for pro-bono counsel). For the following reasons, the Court finds that on balance, Plaintiff's language barrier and inability to understand basic requirements to move the litigation forward weigh heavily in favor of this Court's decision to grant Plaintiff's motion.

With respect to the first factor, a plaintiff's ability to present his own case, courts consider a plaintiff's "education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6. F.3.d at 156. Courts also consider a plaintiff's ability to comprehend English. *See Hernandez v. Montoya*, No. 16-4592, 2018 WL 4676042, at *3 (D.N.J. Sept. 27, 2018) (holding

5

that plaintiff's inability to comprehend English in conjunction with plaintiff's extensive reliance on paralegals weighs in favor of appointing pro bono counsel). During the December 15 Conference, it became readily apparent to the Court that Plaintiff's struggles in comprehending English weigh significantly in favor of appointing pro bono counsel. For example, Plaintiff has great difficulty understanding and communicating in English, and has requested an interpreter at his deposition. Tr. of Dec. 15 Conf., D.E. 51, at 4:18-19. Plaintiff explained, "I was born here in the U.S., but my parents are from Puerto Rico. My parents took me to Puerto Rico at an early age, so my English just went away all the way to the age of 16, 17." *Id*. at 5:6-10. In an effort to assist the Court and Defense Counsel in clarifying the Spanish dialect that Plaintiff would need in an interpreter, Mr. Marcum questioned, "Mr. Ramos, you're saying to the Court that a Spanish interpreter who is trained to interpret the Puerto Rican dialect of Spanish would be the most appropriate for you . . . correct?" *Id*. at 6:4-7. When the Court asked Mr. Marcum to confirm that Plaintiff understood the question, Mr. Marcum responded: "Mr. Ramos just indicated to me that he sort of got it, was sort of – he kind of gave me a – pointed at me and was questioning." *Id*. at 7:24-25. Based on this colloquy, it is clear that Plaintiff is capable of understanding only a small portion of the Court proceedings, even with Mr. Marcum's assistance.

      In determining whether to appoint pro bono counsel to a plaintiff confined in an institution, courts consider a plaintiff's reliance on "prison paralegals." *See Holmes v. Christie*, No. 16-1434, 2022 WL 909848, at *2 (D.N.J. Mar. 29, 2022) (holding plaintiff cannot independently present his case where "the entirety of the pleadings, briefs, appendices, motions and requests in this action have been prepared by another prisoner."). Plaintiff has required extensive assistance from Mr. Marcum throughout this litigation. *See generally* Tr. of Dec. 15 Conf., D.E. 51. As per Mr. Marcum, he has had to "explain[ ] a lot of the legal procedure to Mr.

Ramos because some[ ]things he simply just doesn't understand." *Id*. at 12:8-10.  Indeed, Mr. Marcum stated that Plaintiff did not understand that he was required to complete the United States Marshal's service forms so that they could serve the Complaint and Summons on Defendants, delaying the proceedings in this matter for several months.  *Id*. at 11:23-12:7 ("And, again, part of the reason … for … one of the delays of three months after the initial dismissal was Mr. Ramos didn't even understand the forms to serve the defendants, the sheriff's forms."). Plaintiff simply failed to understand the nature and necessity of the required paperwork without Mr. Marcum's instruction.

Plaintiff has also relied extensively on Mr. Marcum for advancement of his case.  *Id*. Plaintiff has struggled with simple tasks associated with court proceedings, such as organizing his own certification.  Mr. Marcum noted, "I gave him . . . a stack of his own paperwork to collate one day, and he had the notice of appearance of one of the lawyers as the first page of one of his certifications."  *Id.* at 18:9-14.  Mr. Marcum stated that "[Plaintiff] understands what was done wrong to him. And he understands the court is the place to put it right. He has absolutely no idea how to go about doing it."  *Id.* at 18:15-18.  Plaintiff's heavy reliance on Mr. Marcum and Plaintiff's inability to understand court documents and legal procedure demonstrate that Plaintiff is unable to independently represent himself.  *Id*.  At bottom, Plaintiff's inability to comprehend English combined with his heavy reliance on the assistance of others weigh in favor of pro bono appointment.  *See Hernandez*, 2018 WL 4676042, at *3.

Turning to the third *Tabron* factor, a *pro se* plaintiff's inability to conduct a factual investigation, the Court finds that this factor also weighs substantially in favor of appointing counsel.  *Tabron*, 6. F.3.d at 156.  Plaintiff's inability to fully comprehend English and his significant reliance on Mr. Marcum to present his case similarly render his ability to conduct a

7

factual investigation difficult at best and nearly impossible at worst. Plaintiff's claims of sexual harassment, retaliation, and denial of sex offender treatment require Plaintiff to conduct a substantial factual investigation concerning these claims through interrogatories, requests for production of documents, and depositions. Given the Court's recent interactions with Plaintiff, it doubts that Plaintiff will be able to utilize these discovery tools in any meaningful way. Therefore, Plaintiff's inability to conduct a factual investigation favors pro bono appointment.

The fourth factor required the Court to consider the amount a case is likely to turn on credibility determinations. *Parham*, 126 F.3d at 460. Because most cases require at least some credibility determination, the Third Circuit has instructed courts to consider "whether the case [will be] solely a swearing contest." *Montgomery*, 294 F.3d at 505 (citing *Parham*, 126 F.3d at 460). "[A] 'swearing contest' occurs when the resolution of the case 'may well depend on nothing more than whom the finder of fact believes.'" *Abulkhair v. U.S. Postal Serv.*, No. 13-7796, 2014. WL 1607379, at *4 (D.N.J. Apr. 22, 2014) (quoting *Wassell v. Youkin*, No. 07-326, 2008 U.S. Dist. LEXIS 1820, at *14 (W.D. Pa. 2008)).

Plaintiff contends that "[c]redibility will be a major factor in deciding this case and the facts of who did and said what and when will determine who has that credibility and who does not." Ltr. Br. in Supp., D.E. 25, at 7. Although it is too early to tell whether Plaintiff is correct, it is certainly foreseeable that the credibility of witnesses will factor significantly in this matter. Indeed, credibility determinations could be central to disposition of Plaintiff's sexual harassment claims. For example, Plaintiff's allegation that Officer Gallotta touched his buttocks in a sexual manner, Compl., D.E. 1, at 7, very well might come down to a credibility contest. The same may be said for Plaintiff's allegation that Dr. Baird retaliated against him for filing a grievance against Dr. Baird by touching his buttocks in a sexual manner, and threatening that Plaintiff

would "go to South" (*i.e.*, the lock-up unit) if Plaintiff reported Dr. Baird's conduct. *Id.* at 8. Similarly, Plaintiff's retaliation claims may turn on credibility determinations. For example, Plaintiff relies on a March 19, 2020 meeting with Defendants Ames and Dr. Riley, Compl., D.E. 1, at 6-7. During that meeting, Ames and Dr. Riley allegedly confronted Plaintiff with a letter that Plaintiff had written to the Treatment Ombudsman complaining about Kamrin's conduct. *Id.* At or around the date of that meeting, Plaintiff alleges, Ames and Dr. Riley retaliated against him for filing grievances by mischaracterizing his behavior as "escalating," and placing Plaintiff on a modified activities program. *Id.* The modifications included Plaintiff losing his job and a reduction in his designated treatment progress level from Phase Three to Phase Two. *Id.* Whether the March 19, 2020 meeting occurred, and unfolded in the manner that Plaintiff alleges, will likely turn on credibility determinations.

Furthermore, considering the age of the case, the Court's ability and discretion to manage its docket, and the necessity of advancing this litigation, the Court finds that on balance the *Tabron* factors weigh significantly in favor of appointing Plaintiff counsel.

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for appointment of pro bono counsel. Mot. for Pro Bono Counsel, December 12, 2023, D.E. 41. An appropriate Order accompanies this Opinion.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: July 9, 2024